IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

BILLY WAYNE STANFIELD, #1767004, )
)
    Plaintiff, )
)
v. ) CIVIL ACTION NO. 2:14cv907-CSC
) (WO)
DR. DARBOUZE, *et al.*, )
)
    Defendants. )

**MEMORANDUM OPINION and ORDER**

In this 42 U.S.C. § 1983 action, inmate plaintiff Billy Wayne Stanfield ("Stanfield"), complains that the defendants violated his rights secured by the Eighth Amendment when they were deliberately indifferent to his serious medical needs by failing to treat his skin cancer. Stanfield names as defendants Dr. Jean Darbouze, Medical Director at Easterling Correctional Facility, Dr. Hugh Hood, Associate Regional Medical Director, and Corrections Medical Services, Inc.[1] Stanfield seeks compensatory and punitive damages. The court has jurisdiction pursuant to 28 U.S.C. § 1331. Pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties have consented to the United States Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment.

Pursuant to the orders of this court, the defendants filed a written special report, as supplemented, and supporting evidentiary materials addressing the plaintiff's claims. In accordance with the order entered on September 2, 2014 (doc. # 4), the court now deems it appropriate to treat the defendants' special report as supplemented as a motion for summary

---

[1] Correctional Medical Services Inc. is now known as Corizon, LLC. (Doc. # 11).

judgment. The plaintiff was provided an opportunity to respond to the motion as supplemented and has done so. Upon consideration of the motion, pleadings, responses and evidentiary material filed in support of and in opposition to the motion, the court concludes that the motion for summary judgment is due to be granted.

## II. STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute][2] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation omitted); FED.R.CIV.P. 56(c) (Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine [dispute] as to any material fact and that the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence which would be admissible at trial indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in

---

[2] Effective December 1, 2010, the language of Rule 56(a) was amended. The word "dispute" replaced the word "issue" to "better reflect[] the focus of a summary-judgment determination." FED.R.CIV.P. 56(a), Advisory Committee Notes, 2010 Amendments.

2

support of some element of his case on which he bears the ultimate burden of proof. *Id.* at 322-324.

Once the defendants meet their evidentiary burden and demonstrate the absence of a genuine dispute of material fact, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324. A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison [medical personnel]. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted). Consequently, to survive the defendants' properly supported motion for summary judgment, Stanfield is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id*. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that

party." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990) *quoting Anderson*, *supra*. Hence, when a plaintiff fails to set forth specific facts supported by appropriate evidence sufficient to establish the existence of an element essential to his case and on which he will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Indus., Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Sec'y of Dep't of Children & Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party,

there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co, Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Although factual inferences must be viewed in a light most favorable to the non-moving party, and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing a genuine dispute of material fact. *Beard*, 548 U.S. at 525; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.

### III. FACTS[3]

Stanfield was incarcerated at the Easterling Correctional Facility when he first complained to the medical staff of a skin condition. On January, 2, 2013, Stanfield completed a health services request form indicating that he was having skin problems when he shaved. (Doc. # 11-3, Ex. A at 9). Stanfield was seen by a nurse and referred to the doctor. (*Id.*) On January 7, 2013, Stanfield refused a medical appointment. (*Id.* at 14). On January 14, 2013, Stanfield did not appear for his scheduled appointment with the doctor. (*Id.* at 15).

On March 11, 2013, Stanfield complained that he was still experiencing "spots" on his face that were burning and itching. (*Id.* at 16). He did not, however, show up for sick call on March 12, 2013. (*Id.* at 17).

---

[3] The court construes the facts in a light most favorable to the non-movant, the plaintiff in this case. *See, e.g. Brown v. Crawford*, 906 F.2d 667 (11th Cir. 1990).

On April 18, 2013, Stanfield completed another health service request form complaining that the rash on his face burned. (*Id*. at 21). The nurse noted the rash and that Stanfield had previously been treated with an antifungal cream. (*Id*. at 22). He was given Tolnaftate cream. (*Id*. at 23). On April 26, 2013, Stanfield completed a health service request form requesting treatment for the rash. (*Id*. at 24). However, he also refused to attend sick call. (*Id*. at 25).

On May 10, 2013, Stanfield submitted a health service request form in which he indicated that the rash on his face was not getting any better; that another spot under his right eye had developed; and he had red bumps on his face. (*Id*. at 26). Although the antifungal cream helped with the itching, the rash was still present and Stanfield asked to see a doctor. (*Id*.).

On May 20, 2013, Dr. Darbouze examined Stanfield and requested an appointment with a free world dermatologist be made for him. (*Id*. at 29). A consultative appointment with Dr. Thomas Taylor was scheduled that day for June 26, 2013. (*Id*. at 30). On June 8, 2013, Stanfield submitted a health service request form complaining about the rash on his face because it burned and hurt and was waking him up at night. (*Id*.). However, he did not attend sick call. (*Id*. at 32).

On June 26, 2013, Stanfield saw Dr. Taylor. Dr.Taylor removed a lesion on Stanfield's face to biopsy to determine whether it was skin cancer or actinic keratosis, a non-malignant condition that can eventually develop into skin cancer. (*Id*. at 35). On June 27, 2013, Dr. Darbouze requested, and Dr. Hood approved, a follow up appointment with Dr.

6

Taylor. (*Id*. at 38-39). On June 28, 2013, the pathology report indicated that Stanfield was suffering from basosquamous carcinoma on his left facial cheek. (*Id*. at 37).

On July 24, 2013, Stanfield returned to Dr. Taylor who noted that the site had healed, there was no indication of a recurrence of cancer, and recommended that Stanfield see him again in October "or as needed". (Doc. # 19-2 at 23). On August 2, 2013, Dr. Hood denied the request for another consultation with Dr. Taylor because Dr. Taylor did not affirmatively recommend another appointment, and Dr. Darbouze could monitor Stanfield's condition. (Doc. # 11-3, Ex. A at 54).

On March 16, 2014, Stanfield submitted a request for sick call because the "same red sports returned on left and right side of face. This was ruled as skin cancer not getting any better. Follow up from last year." (Doc. # 11-4 at 6). On March 26, 2014, Stanfield was first evaluated by a nurse. Dr. Darbouze then prescribed hydrocortisone cream and cautioned Stanfield to stay out of the sun. (*Id*. at 39).

On April 24, 2014, Dr. Darbouze saw Stanfield for a follow up appointment, and determined that Stanfield was suffering from actinic keratosis which was precancerous but not skin cancer. (*Id*. at 47).

On June 29, 2014, Stanfield complained that the red spots on his face were not going away, and he had increased sensitivity to sunlight. (*Id*. at 16). Stanfied was examined by a nurse. (*Id*. at 17-18). Dr. Darbouze saw Stanfield on July 14, 2014, and noted that Stanfield needed to avoid excessive sunlight because of his actinic keratosis. (*Id*. at 48).

On August 31, 2014, Stanfield underwent his annual physical, and at that time there

were no signs of skin cancer. (Doc. # 19-3 at 41-45).

On January 29, 2015, Stanfield complained of itching on his face. (*Id*. at 59). Stanfield was evaluated by a nurse who noted some redness, and he was prescribed hydrocortisone cream at his request. (*Id*. at 59-61).

On February 27, 2015, Stanfield requested that his prescription for hydrocortisone cream be refilled, and it was. (*Id*. at 63-65). Stanfield was brought to the medical unit on March 7, 2015 but he declined an evaluation contending that it was unnecessary. (*Id*. at 66).

In April 2015, Dr. Darbouze opined that "[t]here is no indication in Mr. Stanfield's medical records that, since June of 2013, he has reported any conditions or any signs or symptoms, which would indicate a recurrence of basal cell carcinoma." (Doc. # 19 at Ex. 1).

On April 29, 2015, Stanfield had a follow-up appointment with Dr. Taylor. At that time, Dr. Taylor noted that although Stanfield had a history of basosquamous carcinoma, he was currently suffering from actinic keratosis. (Doc. # 26 at 2).

> [A]s it relates to Mr. Stanfield, he did not exhibit any signs or symptoms of any current malignancy or cancerous growth on his face or skin, but his condition continues to develop in a manner that warrants continued monitoring.

(*Id.*).

On May 7, 2015, Dr. Darbouze refilled Stanfield's prescription for hydrocortisone cream.

On May 15, 2015, Stanfield requested sunscreen. Initially, his request was denied because sunscreen was available for purchase in the canteen. However, when Stanfield made

8

it known that he could not afford to purchase sunscreen, Dr. Darbouze agreed to provide him with sunscreen. (Doc. # 26-1 at 2).

In December, 2015, Stanfield was transferred from Easterling Correctional Facility to J.O. Davis Correctional Facility in Atmore, Alabama. *See* Doc. # 30.

## IV. DISCUSSION

**A.     Failure to Exhaust**.  In their special report as supplemented, the defendants assert that the plaintiff's claims are due to be dismissed because Stanfield has failed to exhaust his available administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).   The PLRA requires exhaustion of available administrative remedies before a prisoner can seek relief in federal court on a § 1983 complaint. Specifically, 42 U.S.C. § 1997e(a) states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  "Congress has provided in § 1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative remedies." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  Moreover, exhaustion of all available administrative remedies is a precondition to litigation and a federal court cannot waive the exhaustion requirement. *Jones v. Bock,* 549 U.S. 199, 211 (2007) ("There is no question that

9

exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). *See also Booth*, 532 U.S. at 741; *Alexander v. Hawk*, 159 F.3d 1321, 1325 (11th Cir. 1998).

Finally, the plaintiff is required by the PLRA to *properly* exhaust his claims. *Woodford v Ngo*, 548 U.S. 81, 92 (2006) (emphasis in original). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without some orderly structure on the course of its proceedings." *Id*. at 91. Thus, "a prisoner must complete the administrative review process in accordance with applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Id*. at 88.

It is undisputed that Corrections Medical Services has a grievance procedure and that Stanfield has not availed himself of it. The undisputed evidentiary materials submitted by the medical defendants demonstrate that Stanfield failed to file a grievance challenging the medical treatment about which he now complains. In his response to the defendants' special report, Stanfield contends he submitted grievances. However, his response is not sworn and he does not attach copies of any grievances related to his medical treatment at Easterling Correctional Facility before May 2015.[4] *See* Doc. # 16. Thus, it is undisputed that Stanfield failed to file a grievance with respect to the claims presented in this case as required by the grievance procedure in effect at the time of his complaints. Furthermore, it is undisputed that

---

[4] In June 2015, Stanfield submitted a response in which he attached copies of grievancs filed in May, 2015 specifically addressing the need for sunscreen. (Doc. # 28). As a result of those grievance, the defendants agreed to provide Stanfield with sunscreen. *See* Doc. # 26.

the administrative remedy provided by the defendants regarding the instant claim is no longer available to Stanfield. Under such circumstances, dismissal with prejudice is appropriate. *Bryant v. Rich*, 530 F.3d 1368, 1375 n.1 (11th Cir. 2008); *Johnson v. Meadows*, 418 F.3d 1152, 1157 (11th Cir. 2005); *Marsh v. Jones*, 53 F.3d 707, 710 (5th Cir. 1995) ("Without the prospect of a dismissal with prejudice, a prisoner could evade the exhaustion requirement by filing no administrative grievance or by intentionally filing an untimely one, thereby foreclosing administrative remedies and gaining access to a federal forum without exhausting administrative remedies."); *Berry v. Kerik*, 366 F.3d 85, 88 (2nd Cir. 2004) (footnotes omitted) (inmate's "federal lawsuits . . . properly dismissed with prejudice" where previously available administrative remedies had become unavailable and no circumstances justified the failure to exhaust). The defendants are therefore entitled to summary judgment on Stanfield's claims challenging his medical treatment due to his failure to properly exhaust administrative remedies previously available to him.

**B. Deliberate Indifference.** Even had Stanfield exhausted the available administrative remedy, he still remains entitled to no relief as the record establishes the defendants did not act with deliberate indifference to his medical condition. Although Stanfield challenges the treatment decisions rendered by medical personnel, and asserts that the medical defendants failed to timely seek medical treatment for him, these assertions fail to establish deliberate indifference as the medical records indicate the defendants provided appropriate treatment to Stanfield based on his medical history, his medical records including pathology and consultative reports, and their evaluations of his condition. The medical

11

records establish that when Stanfield sought medical treatment for the rash on his face, he was examined by medical personnel. When his condition continued, Stanfield was sent to Dr. Taylor, a dermatologist, who evaluated and treated him. The medical records further demonstrate medical personnel routinely examined Stanfield regarding any complaints, prescribed hydrocortisone cream and sunscreen, and provided follow-up care for his skin condition. At Stanfield's last consultation with Dr.Taylor, there were no signs or symptoms that the basosquasmus carcinoma had returned.

To prevail on a claim concerning an alleged denial of adequate medical treatment, an inmate must, at a minimum, show that the defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir.1986). Specifically, medical personnel may not subject an inmate to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106; *Adams v. Poag*, 61 F.3d 1537, 1546 (11th Cir. 1995) (citation and internal quotations omitted) (Under *Estelle*, plaintiff must establish "not merely the knowledge of a condition, but the knowledge of necessary treatment coupled with a refusal to treat or a delay in [the acknowledged necessary] treatment." *Mandel v. Doe*, 888 F.2d 783, 787 (11th Cir. 1989).

In order to establish "deliberate indifference to [a] serious medical need . . ., Plaintiff[] must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that

need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-1307 (11th Cir. 2009). When seeking relief based on deliberate indifference, an inmate is required to establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (for liability to attach, the official must know of and then disregard an excessive risk to the prisoner). Thus, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference). Furthermore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

> In articulating the scope of inmates' right to be free from deliberate indifference, . . . the Supreme Court has . . . emphasized that not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.' *Estelle,* 429 U.S. at 105, 97 S.Ct. at 291; *Mandel,* 888 F.2d at 787. Medical treatment violates the eighth amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.' *Rogers,* 792 F.2d at 1058 (citation omitted). Mere incidents of negligence or malpractice do not rise to the level of constitutional violations. *See Estelle,* 429 U.S. at 106, 97

13

> S.Ct. at 292 ('Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.'); *Mandel*, 888 F.2d at 787-88 (mere negligence or medical malpractice 'not sufficient' to constitute deliberate indifference); *Waldrop,* 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference). Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment. *See Waldrop,* 871 F.2d at 1033 (citing *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir.1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991); *Taylor*, 221 F.3d at 1258 (To show deliberate indifference to a serious medical need, a plaintiff must demonstrate that [the] defendants' response to the need was more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law.").

Moreover, "as *Estelle* teaches, whether government actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams*, 61 F.3d at 1545; *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) ("A difference of opinion as to how a condition should be treated does not give rise to a constitutional violation."); *Hamm v. DeKalb Cty.*, 774 F.2d 1567, 1575 (11th Cir. 1985) (mere fact inmate desires a different mode of medical treatment does not amount to deliberate indifference violative of the Constitution). Self-serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records. *See Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990).

When an inmate's deliberate indifference claim relates to a delay in treatment, this

court must also consider "(1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay." *Goebert v. Lee County*, 510 F.3d 1312, 1327 (11th Cir. 2007). In a case alleging that delay in medical treatment shows deliberate indifference, the plaintiff "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Hill v. DeKalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187-1188 (11th Cir. 1994), *overruled in part on other grounds*, *Hope v. Pelzer*, 536 U.S. 730, 739 n.9 (2002); *Mann*, 588 F.3d at 1307 (no deliberate indifference to serious medical need where delay did not worsen condition).

Undoubtedly, skin cancer is a serious medical need. However, to be successful on his § 1983 claims, Stanfield must also demonstrate that the medical defendants were "deliberately indifferent" to that need. This he has failed to do. When Stanfield first complained about the rash on his face, he was seen by medical personnel. When Stanfield complained in March 2013, he then failed to attend sick call. In April 2013, Stanfield again complained about a rash on his face, and he was prescribed an antifungal cream. On May 10, 2013, Stanfield requested medical treatment because while the antifungal cream helped with itching, the rash had not improved. Dr. Darbouze examined Stanfield, and on May 20, 2013, made arrangements for Stanfield to be treated by a dermatologist. Stanfield was seen and treated by Dr. Taylor, a dermatologist, on June 26, 2013. Thereafter, although Stanfield was diagnosed with actinic keratosis, this condition is not malignant or cancerous. Stanfield was evaluated by medical staff, Dr. Darbouze or a nurse, each time he presented for sick call.

15

Based on their knowledge of his medical history and upon observation and evaluation of Stanfield, medical personnel initiated a practicable treatment plan which included treatment of his skin cancer and then management of his actinic keratosis through the use of prescription medication and routine evaluations of the inmate. Thus, Stanfield received medical treatment for his medical condition upon his initial complaint and throughout his confinement in the Easterling Correctional Facility in the form of physical examinations, medical evaluations, consultative examinations and treatment by an expert, prescription medication and sunscreen.

Under the circumstances of this case, the court concludes the course of treatment undertaken by the defendants in addressing Stanfield's skin condition did not violate his constitutional rights. The medical care Stanfield received was adequate and certainly not "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to the fundamental fairness." *Harris*, 941 F.2d at 1505. It is undisputed that Stanfield received medical care, and it is evident the defendants rendered treatment to Stanfield in accordance with their professional judgment. In addition, Stanfield has failed to present any evidence which indicates the defendants knew the manner in which they provided treatment created a substantial risk to his health and that with this knowledge consciously disregarded such risk. The allegations presented by Stanfield simply fail to establish deliberate indifference.

An inmate's allegation that prison physicians did not diligently pursue alternative

means of treating a medical condition "did not 'rise beyond negligence'. . . to the level of deliberate indifference." *Hamm*, 774 F.2d at 1505 (inmate's desire for some other form of medical treatment does not constitute deliberate indifference violative of the Constitution). "Mere evidence of negligence "in diagnosing or treating a medical condition" or a showing of medical malpractice does not establish deliberate indifference." *Monteleone v. Corizon*, — F. App'x —, 2017 WL 1404680 *2 (11th Cir. Apr. 20, 2017) (No. 15-11906). Stanfield must "do more than question [Dr. Darbouze's] medical judgment to overcome a summary judgment ruling on his § 1983 claim." *Id*. at *3. This he has not done.

The record is therefore devoid of evidence, significantly probative or otherwise, showing the defendants acted with deliberate indifference to Stanfield's medical condition. Consequently, summary judgment is due to be granted in favor of the defendants.

### IV. CONCLUSION

Accordingly, it is

ORDERED that the defendants' motion for summary judgment be and is hereby GRANTED.

A separate final judgment will be entered.

Done this 19th day of June, 2017.

        /s/Charles S. Coody
        CHARLES S. COODY
        UNITED STATES MAGISTRATE JUDGE